UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CRAIG McATEE,  )
LEE ANN McATEE,  )
    Plaintiffs,  )
        )    1:10-cv-1090-SEB-DKL
vs.  )
        )
BUCA RESTAURANTS, INC., d/b/a/  )
BUCA DI BEPPO,  )
    Defendant.

**ORDER ON PENDING MOTION**

Presently before the Court is Plaintiffs' Motion to Show Cause Regarding Sanctions [Docket No. 49], filed September 6, 2011, pursuant to Rule 37 of the Federal Rules of Civil Procedure. Plaintiffs, Craig and Lee Ann McAtee ("the McAtees"), have requested that the Court order Defendant, Buca Restaurants, Inc., d/b/a Buca di Beppo ("Buca"), to show cause regarding sanctions for its failure to produce documents in accordance with the rules of discovery. For the reasons stated in this entry, we GRANT Plaintiffs' motion and impose sanctions as discussed herein.

**Background**

On May 29, 2010, Craig McAtee slipped and fell while visiting a Buca di Beppo restaurant in Indianapolis, Indiana. As a result of the fall, he alleges serious physical injuries that, in his estimation, will cause him to endure years of pain and economic loss. Compl. ¶¶ 1, 8-9. The McAtees filed their Complaint [Docket No. 1, Ex. 1] against Buca

in the Marion Superior Court on August 2, 2010, alleging that Buca's negligent maintenance of its premises proximately caused Mr. McAtee's injuries. Buca filed its Notice of Removal to federal court on August 26, 2010 [Docket No. 1, Ex. 7], and the parties tendered their Case Management Plan [Docket No. 13] to the magistrate judge on December 2, 2010. The Court approved amendment of the Case Management Plan on January 13, 2011.

Pursuant to the parties' Case Management Plan, all discovery related to non-expert witnesses and liability issues was to be completed by June 1, 2011. Discovery regarding expert witnesses and damages was to be completed by October 3, 2011. First. Am. Case Mgmt. Plan at 4. The parties were also aware that "[s]upplementation under Rule 26(e) [was] required every thirty (30) days before trial." *Id.* at 5.

On September 13, 2010, the McAtees served Buca with a request for production. Request #4 asked for "[c]omplete copies of all manuals, instruction books and other printed material which set forth or relate to Defendant's maintenance policies or procedures." Pls.' Mot. at 2. Buca served its response to the request on February 21, 2011, noting that it had no such policies and objecting to the breadth of Request #4. Defense counsel confirmed this answer on March 2, 2011. *Id.* Additionally, during his June 8, 2011 deposition, Chase Romero—the store manager of the restaurant where Mr. McAtee fell—testified that he knew of no such policies or procedures. Mr. Romero's deposition testimony, in conjunction with Buca's discovery responses, led the McAtees' liability expert to conclude that Buca had no policies outlining "store maintenance,

mopping, or the use of wet floor signs." *Id.* at 3.

In the "damages phase" of discovery, Buca submitted disclosures and reports from Charles Hamburg, a professor of hospitality management. Mr. Hamburg's September 1, 2011 report states as follows:

> Based upon . . . internal documents that have been supplied by Buca di Beppo, specifically "Preventing Slips, Trips and Falls" and . . . the Safety, Sanitation, and Security Procedures and Policies, which includes an employee signature page, I am of the opinion that Buca di Beppo has specific policies and procedures in place and that all employees are informed of them . . . .

Hamburg Report at 1-2. That same day, Buca supplemented its initial response to Request #4 by producing the policies mentioned in Mr. Hamburg's report. Counsel for the McAtees asked defense counsel to explain why these documents had not been produced prior to this late date, but they received no answer.

The McAtees now allege that Buca's late production of the aforementioned documents has significantly prejudiced their case. Their chief concern is Mr. Romero's deposition, which, in their estimation, would have transpired differently had Buca timely supplemented its discovery responses. *See* Pls.' Mot. at 4. Similarly, they contend that their liability expert "went on . . . the record with opinions based on the absence of such documents." *Id.* Buca rejoins that its conduct was in no way prejudicial because "the subject information was simply not known to exist until immediately prior to its disclosure."[1] Def.'s Resp. to Mot. at 3. Further, Buca explains that because the

---

[1] We note, without further comment, the potentially damaging admission that, apparently,
(continued...)

documents were "only later provided to defense counsel by [its] corporate headquarters," *id.*, Mr. Romero's deposition testimony has not been adversely affected by the timing of its disclosure.

**<u>Discussion</u>**

A district court has "the power, and the responsibility, to advance the orderly and expeditious disposition of a case. When a party flouts the Court's authority to do so, the Court may take action, under either its inherent powers or by virtue of the Federal Rules of Civil Procedure." *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 374 (S.D. Ind. 2009) (quoting *Corp. Express, Inc. v. U.S. Office Prods. Co.*, No. 00-c-0883, 2000 WL 1644494, at *6 (N.D. Ill. Oct. 27, 2000)). Because a court's inherent powers are necessarily broad in scope, they must be "exercised with restraint and discretion." *U.S. v. Johnson*, 327 F.3d 554, 560 (7th Cir. 2003).

Here, the McAtees have invoked Rule 37(c)(1) of the Federal Rules of Civil Procedure as grounds for sanctioning Buca's discovery-related conduct. This rule, which governs failure to disclose or to supplement an earlier response, provides:

> (1) If a party fails to provide information or identify a witness as required by Rule 26 (a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's

---

[1](...continued)
the local managers of the restaurant where Mr. McAtee had his fall knew nothing of the corporate publication on preventing such falls.

> fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions . . . .

Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) contemplates information that was not disclosed despite a duty to do so under Rule 26(a) or 26(e). In the instant litigation, the applicable provision of Rule 26 is subpart (e), which states as follows, in pertinent part:

> (1) A party who has made a disclosure . . . or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties . . .; or
> (B) as ordered by the court.

Fed. R. Civ. P. 26(e)(1).

Under this constellation of rules, after responding to the McAtees' request for production by denying awareness of any maintenance policies, Buca assumed the burden of correcting this response if it became aware of such a policy. Procedures governing mopping, maintenance, and placement of cautionary signs bear directly upon the standard of care to which Buca might be held, which satisfies the rule's condition that the error be "material." Therefore, if the Court deems Buca's supplemental response untimely, Rule 37(c)(1) justifies the exclusion of these newly produced policies at trial. In fact, the Seventh Circuit "has stated that 'the sanction of exclusion [under Rule 37(c)(1)] is automatic and mandatory unless the sanctioned party can show that its violation . . . [of Rule 26] was either justified or harmless.'" *David v. Caterpillar, Inc.*, 324 F.3d 851, 857

5

(7th Cir. 2003) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)).

We believe the record supports a finding that Buca did not supplement its answer to Request #4 "in a timely manner" as required by Rule 26(e)(1). More than one person represented as early as February 2011 that the restaurant had no policies pertaining to the circumstances of Mr. McAtee's fall. In our view, if Buca had truly been made aware of such policies by corporate headquarters, it is highly unlikely that this disclosure took place more than six months after the McAtees originally requested these documents. The date of Buca's supplemental response—the same day its expert disclosures were due—is not itself dispositive of untimeliness. However, Buca's allegation that it "supplemented well in advance of this matter's discovery cutoff" does not persuade us to consider the disclosures timely.

The question then becomes whether Buca's late disclosure of the policies was either substantially justified or harmless. "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *David*, 324 F.3d at 857 (citation omitted). Rather, several factors should inform the court's decision: (1) unfair surprise or prejudice to the opposing party; (2) the offending party's opportunity to cure such prejudice; (3) likelihood of trial disruption; and (4) any bad faith motivating the offending party's tardy disclosure. *Id.*

Buca offers as justification only that the Case Management Plan required

supplementation every thirty (30) days before trial. However, this argument does not comport with the philosophy underlying the discovery process. "[P]oor judgment . . . and a degree of indolence, as well as a lack of candor in failing to report" information all fall within the realm of conduct that is not "substantially justified" or "harmless" during discovery. *Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997). Even if Buca's Indianapolis managers were unaware of certain corporate policies, the company was not absolved of its duty to produce documents maintained by other employees. *See Novelty, Inc.*, 265 F.R.D. at 375-76; *McBryar v. Int'l Union of United Auto. Aerospace & Agric. Implement Workers of Am.*, 160 F.R.D. 691, 695 (S.D. Ind. 1993) (noting that "[o]wnership is not required" to invoke a party's duty to produce company documents).

Moreover, in our estimation, the most glaringly important of the aforementioned factors is the unfair surprise or prejudice flowing from Buca's late disclosure. We find Buca's assertion that "the . . . disclosure does not prejudice the plaintiffs in any way" both cavalier and unpersuasive. Without Buca's adherence to Rule 26, neither the parties nor the Court can be certain that the McAtees have been properly apprised of material facts. "To avoid such uncertainty is exactly what Rule 26 is designed to do. It guarantees, to both parties, reciprocally equal knowledge about what the opposing expert has (and more importantly has *not*) based [his] opinions upon . . . ." *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 715 n.3 (7th Cir. 2004). As stated above, these policies are critical to a determination of whether Buca observed a standard of reasonable care in maintaining its

premises. That the McAtees' liability expert can revise his report does not make the surprise any more excusable or "cure" the need to reopen depositions of certain witnesses. Accordingly, we find Buca's "eleventh hour" disclosure of the restaurant policies worthy of correction, certainly, and of censure.

"Although the district courts have significant flexibility in the application of the rules in question, that latitude is clearly constrained by the principles of due process of law." *Am. Nat'l Bank & Trust Co. of Chi. v. Equitable Life Assurance Soc'y*, 406 F.3d 867, 878 (7th Cir. 2005) (quoting *Salgado*, 150 F.3d at 740). Rule 37 also contemplates due process by providing that the court may order sanctions "on motion and after giving an opportunity to be heard." Fed. R. Civ. P. 37(c)(1). Due process is satisfied here because Buca had and exercised—although perhaps not thoughtfully—an opportunity to address its Rule 26 violation in its response brief to the Plaintiffs' Motion for Sanctions. As a result, Rule 37 permits the Court to "order payment of . . . reasonable expenses" attributable to the violation. Fed. R. Civ. P. 37(c)(1)(A).

We are mindful that any specific sanction "must be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction." *Salgado*, 150 F.3d at 740. Guided by this standard, we believe the most appropriate result in this situation is to hold Buca responsible for the costs associated with revising the report prepared by the McAtees' liability expert. This endeavor will require further deposition of Mr. Romero, who was previously unaware that Buca has policies governing

store maintenance, mopping, and "wet floor" signs. Thus, Buca shall be ordered to pay the reasonable costs of reopening the deposition of Mr. Romero. Twenty (20) days after completion of this deposition, but no later than January 13, 2012, counsel for the McAtees shall submit a statement of the costs and fees involved, attaching invoices and time entries that support this request. Buca shall have fourteen (14) days to respond, and the McAtees shall have seven (7) days to reply, at which point it will be fully briefed for the Court's consideration at the final pretrial conference.

SO ORDERED.

Date: _____12/02/2011_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Bruce P. Clark
BRUCE P. CLARK & ASSOCIATES
bpc@bpc-law.com

Jennifer E. Davis
BRUCE P. CLARK & ASSOCIATES
jed@bpc-law.com

Nicholas Calvin Deets
HOVDE LAW FIRM
ndeets@hovdelaw.com

John M. Krug
KOPKA PINKUS DOLIN & EADS, LLC
jmkrug@kopkalaw.com